UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL R.,

                              Plaintiff,

v.                                                      3:18-CV-1305 (ATB)

COMM'R OF SOC. SEC.,

                              Defendant.
_____

APPEARANCES:                              OF COUNSEL:

COUGHLIN & GERHART, LLP                    SCOT G. MILLER, ESQ.
Counsel for Plaintiff
P.O. Box 2039
99 Corporate Drive
Binghamton, NY 13902-2039

U.S. SOCIAL SECURITY ADMIN.                DANIEL STICE TARABELLI, ESQ.
OFFICE OF GEN. COUNSEL
Counsel for Defendant
15 Sudbury Street, Ste 625
Boston, MA 02203

ANDREW T. BAXTER, United States Magistrate Judge


## DECISION and ORDER

Currently before the Court, is this Social Security action filed by Daniel R. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3).  This matter was referred to me, for all proceedings and

entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with

the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the

consent of the parties. (Dkt. Nos. 4, 7).  The parties have filed briefs (Dkt. Nos. 9, 13)

addressing the administrative record of the proceedings before the Commissioner (Dkt. No. 8).[1]

# I.    RELEVANT BACKGROUND

## A.    Factual Background

Plaintiff was born in 1991, making him 23 years old as of the amended alleged onset date and 26 years old on the date of the ALJ's decision.  (T. 169.)  Plaintiff reported completing the eleventh grade.  (T. 186.)  He had no past relevant work, having lasted a week or less on several different jobs over the years.  (T. 40-41.)  At the initial level, Plaintiff alleged disability due to traumatic brain injury, acquired brain injury, and bipolar disorder.  (T. 185.)

## B.    Procedural History

Plaintiff applied for Supplemental Security Income ("SSI") on December 5, 2014, alleging disability beginning on September 1, 1993.  (T. 68, 78, 169-74.)  He subsequently amended his alleged onset date to his protective filing date of December 5, 2014.  (T. 35, 68.) Plaintiff's application was initially denied on March 18, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared before ALJ Kenneth Theurer at a hearing on March 31, 2017, during which a vocational expert ("VE") also testified.  (T. 32-67.)  On August 24, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act.  (T. 7-26.)  On September 6, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

---

[1] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

## C.     The ALJ's Decision

In his decision (T. 13-23), the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 5, 2014, the application date.  (T. 13.)  The ALJ concluded that Plaintiff had severe impairments including affective disorder, attention deficit hyperactivity disorder ("ADHD"), intermittent explosive disorder, and cognitive disorder.  (*Id*.)  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 14-16.)  Specifically, the ALJ considered Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), and 12.11 (neurodevelopmental disorders).  (*Id*.)

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with non-exertional limitations including that

> [he] is able to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact with others to the extent necessary to carry out simple tasks, but should avoid work requiring more complex interaction or joint efforts to achieve work goals, should not have more than incidental interaction with the public, can handle reasonable levels of simple work-related stress in that he can make simple decisions directly related to the completion of his tasks and work in a stable, unchanging work environment.

(T. 16.)  Relying upon testimony from a vocational expert, he ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  (T. 22.)  The ALJ therefore found that Plaintiff was not disabled.  (T. 23.)

## D.     Issues in Contention

In his brief, Plaintiff contends that the ALJ erred in affording no weight to the opinion

of treating psychologist Mark Kovaleski, Ph.D., and failing to discuss the regulatory factors for evaluating the treating physician's opinion. (Dkt. No. 9, at 19-21.) Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly disregarded any evidence suggesting disability by giving only partial weight to the consultative opinion of Mary Ann Moore, Psy.D., while giving great weight to a prior consultative opinion from Alan Dubro, Ph.D., and great weight to the non-examining opinions of E. Kamin, Ph.D. (*Id*. at 21-25.) Finally, Plaintiff maintains that the ALJ failed to properly develop the record by not retrieving Plaintiff's child SSI file and by finding that those records were not relevant to the current claim. (*Id*. at 25-27.)

Defendant argues that substantial evidence supports the ALJ's assessment of Plaintiff's RFC, and that the ALJ properly weighed the medical opinions. (Dkt. No. 13, at 3-14.) Defendant further contends that the ALJ was not required to obtain evidence created during Plaintiff's childhood and correctly determined that evidence from Plaintiff's childhood SSI case was not relevant to the current decision. (*Id*. at 14-16.)

The Court finds that the ALJ did not err in declining to include Plaintiff's child SSI file as part of the record with respect to his claim for SSI as an adult. However, the Court concludes that the ALJ did err in other respects in weighing the medical opinion evidence, and that a remand is required.

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only

if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    DISCUSSION

### A.    The ALJ's Did Not Err in Excluding the Plaintiff's Childhood SSI File

#### 1.    Applicable Law

It is well-settled that, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative duty to develop the record, whether or not a plaintiff is represented. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 685, F.2d 751, 755 (2d Cir. 1982)). Despite the duty to develop the

record, remand is not required where the record contains sufficient evidence from which the ALJ can assess a claimant's RFC. *Weed Covey v. Colvin*, 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)). "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

### 2. Analysis

Plaintiff argues that the ALJ failed to properly develop the record by not incorporating the administrative file relating to Plaintiff's childhood SSI application, based upon the ALJ's finding that these records were not relevant to the current claim. (Dkt. No. 9, at 25-27.) The Court finds that the ALJ had adequate grounds to decline to consider Plaintiff's childhood SSI file and, even if the ALJ erred in that decision, the error was harmless.

The ALJ noted that Plaintiff's representative asked that documents from Plaintiff's prior child's disability case be included as exhibits, and he explained this request was declined

> because those records are not relevant to this decision as they relate only to medical evidence prior to the claimant's attainment of age 18. Moreover, there was a subsequent unfavorable determination and an unfavorable Administrative Law Judge decision issued on September 23, 2011 that was upheld by the Appeals Council. Therefore, the claimant cannot be found disabled prior to September 23, 2011.

(T. 10.) Although the ALJ initially suggested at the administrative hearing that he was inclined to associate the earlier records with Plaintiff's current claim, his decision not to do so reflects the reasonable conclusion that these records were not relevant to his determination of Plaintiff's alleged disability in and after December 2014. (T. 10, 36.) Indeed, the ALJ was

considering Plaintiff's adult disability claim and determining his RFC based on current functioning. (T. 10-23.) The evidence before the ALJ included sufficient information pertaining to impairments originating during Plaintiff's childhood. As Defendant points out, the ALJ considered a 2006 report from Kenneth W. Reagles, Ph.D., which included a detailed summary of Plaintiff's childhood medical issues related to carbon monoxide poisoning. (Dkt. No. 13, at 16; T. 18, 239, 269-300, 326.) The record also contains multiple opinions relating to Plaintiff's mental impairments and limitations, including two psychological/psychiatric evaluations from 2011 and 2015, both of which discuss Plaintiff's childhood psychiatric history. (T. 242-47, 301-05.)

While this Court has previously noted that the "'ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment[,]" the lack of additional evidence with respect to Plaintiff's treatment as a child does not create a clear gap in the administrative record. *Tammy H. v. Comm'r of Soc. Sec.*, 18-CV-851 (ATB), 2019 WL 4142639, at *10 (N.D.N.Y. Aug. 30, 2019) (citations omitted). Here, in analyzing Plaintiff's claim, the ALJ considered the evidence of record, including Plaintiff's daily activities, his testimony at the administrative hearing, his treatment records, and the various medical opinions. (T. 44-57, 71-77, 181-98, 235-47, 263-330.) The Court finds that additional evidence of Plaintiff's childhood evaluations and treatment was not necessary for the ALJ to assess Plaintiff's current functioning and RFC. Even if the ALJ erred in not associating Plaintiff's child SSI file with his current claim, the Court concludes that the ALJ adequately discussed relevant evidence from Plaintiff's childhood and took into account the longitudinal nature of Plaintiff's mental impairments. (T. 17-21.) Thus, any error in not expanding the record with respect to Plaintiff's childhood was harmless, and remand is not required on this

basis. However, as noted below, the ALJ may have failed to address a significant ambiguity in the record with respect to Plaintiff's treatment, as an adult, by psychologist, Dr. Kovaleski.

**B.** **The ALJ Erred in his Analysis of the Medical Opinion Evidence, and that Error Tainted his RFC Analysis**

### 1. Applicable Law

#### a. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### b. Consideration of Opinion Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'"
*Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting
*Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted
to substitute his own expertise or view of the medical proof for the treating physician's opinion
or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)
(*citing Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008)).

The Second Circuit has long recognized the 'treating physician rule' set out in 20
C.F.R. § 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and
severity of the impairment is given 'controlling weight' so long as it is 'well-supported by
medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting
*Burgess v. Astrue*, 537 F.3d at 128). However, " . . . the opinion of the treating physician is not
afforded controlling weight where . . . the treating physician issued opinions that are not
consistent with other substantial evidence in the record, such as the opinions of other medical
experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ
must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment;
(2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion
with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*,
802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and
adherence to the regulation is clear, and it is obvious that the "substance of the treating
physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R.

§ 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 416.927(c)(1)-(6).

In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Miller v. Comm'r of Soc. Sec.*, 1:13-CV-1388 GLS, 2015 WL 1383816, at *8 (N.D.N.Y. Mar. 25, 2015) (both consultative examiner and non-examining physician were recognized experts in evaluation of medical issues in disability claims; [a]ccordingly, their opinions can be given weight, even greater weight than opinions of treating physicians, when, as here, they are supported by substantial evidence); *Little v. Colvin*, 5:14-CV-63 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015).

### 2. Relevant Opinion Evidence

#### a. Dr. Kovaleski's Treating Source Opinion

After treating Plaintiff as a child many years before, psychologist Dr. Kovaleski resumed treatment and saw Plaintiff eleven times between May 11, 2016 and April 5, 2017. (T. 46-47 (hearing testimony), 279, 324-330.) On June 16, 2016, during Plaintiff's third psychotherapy session as an adult, Dr. Kovaleski stated that Plaintiff's mother asked him to fill out a Mental RFC Assessment form "for the lawyers." (T. 326.) The form called for "signing

off with 'objective' evidence of his behavior and I refused to sign it. Daniel is completely short on details as far as episodes of him going out and having less than ideal experiences." (T. 326.) On the last page of the form, Dr. Kovaleski noted Plaintiff's reported history of "inability to maintain stability on jobs when attempted[,]" "impulsive – aggressive behavior in public situations[,]" and "shutting himself off in his room for days at a time when under stress." (T. 266.) He also stated: "I have no other information other than individual's subjective report." (*Id.*)

After two more psychotherapy sessions with Plaintiff (on June 30 and July 15, 2016), Dr. Kovaleski apparently re-wrote the last page of the Mental RFC form and signed and dated the form on July 15th. (T. 267, 326-27.) After the additional opportunities to observe Plaintiff and consider his accounts of symptoms and experiences, Dr. Kovaleski repeated the same language regarding Plaintiff's reported history. He omitted the hand-written sentence stating that he had no information other than subjective reports, but apparently covered over the affirmation above the signature line that his "assessment is based upon my objective findings and not only on the individual's subjective complaints." (T. 266.) [2]

In the Mental RFC form signed on July 15, 2016, Dr. Kovaleski noted "Clinical findings" of moderate depression, poor impulse control, defiance of authority figures, social

<hr>

[2] The Court's reconstruction of Dr. Kovaleski's filling out, revising, and signing the Mental RFC form seems fairly clear from his treatment notes and the form which, as submitted to the SSA, included two versions of the last page—one unsigned version with the additional sentence suggesting a lack of objective evidence, and the signed version dated July 15th with that sentence omitted. The fact that the first page (paragraph 1) listed only three dates of prior treatment--5/11, 6/1, and 6/16/2016--without the subsequent treatment dates of June 30th and July 15th, suggest that the first two pages of the form were completed on June 16th and not changed on July 15th. As discussed further below, the ALJ may have interpreted Dr. Kovaleski's Mental RFC form differently, and did not take steps to clarify any ambiguities regarding the Plaintiff's treatment history or the psychologist's opinions.

withdrawal, and irritability. (T. 263.) Dr. Kovaleski diagnosed an unspecified mental disorder due to another medical condition (carbon monoxide poisoning) and intermittent explosive disorder with poor response to treatment. (*Id.*) He opined that Plaintiff would be off-task over 50 percent of the time and had poor ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, deal with stress, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (T. 263-64.) Plaintiff had fair ability to use judgment and function independently and good ability to maintain personal appearance. (T. 264.)

The ALJ afforded no evidentiary weight to Dr. Kovaleski's opinion, stating that it was not based on objective clinical findings, but on Plaintiff's subjective complaints of symptoms. (T. 19.) In rejecting Dr. Kovaleski's opinions, the ALJ emphasized the psychologist's statements on June 16, 2016, that the Plaintiff's account of his experiences and symptoms was "short on details" and that Dr. Kovaleski refused to endorse the Mental RFC form at that time. (T. 19.) The ALJ also observed that Dr. Kovaleski had only seen the Plaintiff three times since May 2016, which failed to account for the psychologist's treatment notes which indicated that he had treated Plaintiff two more times before signing the revised form on July 15th. (T. 326-27.)[3] The ALJ's decision also did not acknowledge that Dr. Kovaleski had treated Plaintiff as a child, as was established at the hearing. (T. 46-47.)

In a treatment note related to Plaintiff's sixth psychotherapy session as an adult, in September 2016, Dr. Kovaleski stated that he did not believe Plaintiff was capable of showing up to a job and being productive. (T. 327.) The ALJ noted this assessment, but did not

---

[3] During the hearing, the Plaintiff testified that he had been seeing Dr. Kovaleski a couple of times per month until a few months before the hearing. (T. 47-49.)

explicitly indicate what, if any, weight was afforded to it.  (T. 19.)

### b.  Consultative Opinions

In August 2006, Dr. Reagles evaluated Plaintiff in light of his medical and academic history, including his 1994 carbon monoxide poisoning.  (T. 272-90.)  Dr. Reagles noted that Plaintiff had been diagnosed with multiple cognitive, personality, behavioral, and learning disorders, secondary to permanent brain damage caused by carbon monoxide poisoning, including oppositional defiant disorder, ADHD, bipolar disorder, and posttraumatic stress disorder.  (T. 290.)  Dr. Reagles opined that, "given Plaintiff's uncontrollable outbursts of verbal and physical aggression directed at both peers and supervisors, [he would be] unable as an adult to maintain sustained and gainful employment in the competitive labor market" but might "be capable as an adult of participating in a day habilitation program or even a supported employment program."  (T. 291.)

The ALJ afforded no evidentiary weight to Dr. Reagles' opinion "because, being issued in 2006 and before the claimant reached adulthood, it is speculative.  Moreover, this does not provide a function-by-function assessment of the claimant's specific limitations and abilities." (T. 18.)  The ALJ noted Plaintiff's activities of daily living and the clinical findings from the 2011 and 2015 consultative examinations suggested Plaintiff retained the ability to perform some work-related mental activities.  (*Id.*)

In January 2011, consultative examiner Dr. Dubro observed that Plaintiff was cooperative and appropriate during the examination, with a coherent and goal-directed thought process, full range of affect, euthymic mood, mildly impaired attention and concentration secondary to distractibility associated with irritability, low-average cognitive functioning, fair insight and judgment, and no evidence of any fidgety or hyperactive behavior.  (T. 303-04.)

Dr. Dubro diagnosed a mood disorder NOS and opined that Plaintiff

> can follow, understand, attend to, and remember directions and
> instructions. [His] attention span and concentration is mildly
> impaired. [He] did experience moderate learning difficulties in
> school. [He] does perform daily tasks independently on a regular
> basis. He does perform complex tasks independently and on a
> regular basis. [He] has displayed moderate difficulties in his ability
> to interact with others in the past. He is capable of making
> appropriate decisions. [He] is seen as an individual who, secondary
> to a mood disorder, may experience mild difficulties in his ability to
> regularly attend to a routine and maintain a schedule. The results of
> the exam are consistent with mood disorder symptoms though they
> do significantly interfere with [his] ability to function on a daily
> basis.

(T. 304.) The ALJ afforded great weight to Dr. Dubro's opinion because it was a medical

opinion and supported by Dr. Dubro's findings upon examining Plaintiff. (T. 19.) The ALJ

concluded that, although this opinion was issued in 2011, it was relevant because Plaintiff

purportedly testified that nothing had changed in terms of his "mental and medical conditions"

since 2011. (*Id.*; *cf.* T. 56-57 (hearing testimony).)

In February 2011, consultant Dr. Kamin found that Plaintiff had mild restriction of

activities of daily living; moderate difficulties in maintaining social functioning and

concentration, persistence or pace; and one or two repeated episodes of deterioration of

extended duration. (T. 316.) More specifically, Dr. Kamin opined that Plaintiff had moderate

limitations in understanding and memory, sustained concentration and persistence, social

interaction, and adaptation, and marked limitation in the ability to carry out detailed

instructions. (T. 320-21.) Dr. Kamin opined Plaintiff was "capable of low stress, simple work

activity, without much interacting with others." (T. 322.) The ALJ afforded these opinions

little evidentiary weight in determining Plaintiff's limitations in the four broad areas of mental

functioning because the regulatory criteria set out in the mental listings had changed at the time

of the ALJ's August 2017 decision. (T. 15-16.) The ALJ noted that the new mental listings did not include activities of daily living and episodes of decompensation, so Dr. Kamin's opinion in that regard was given no evidentiary weight. (T. 16.) The ALJ stated, however, that the new mental listings included interacting with others and concentration, persistence, and pace, so Dr. Kamin's opinion on these areas was relevant and given some weight. (T. 16.) The ALJ noted Dr. Kamin's opinion in this regard was supported by the clinical findings during the consultative examinations as well as the evidence as a whole. (*Id*.)

In determining Plaintiff's RFC, the ALJ afforded great weight to Dr. Kamin's 2011 opinions because they were medical opinions and based on Dr. Kamin's medical expertise, knowledge of the Social Security disability programs, and review of the evidence of record. (T. 21.) The ALJ also noted Dr. Kamin's opinion was consistent with Dr. Dubro's examining source opinion. (*Id*.)

In March 2015, consultative examiner Dr. Moore observed that Plaintiff was generally cooperative and responsive to questioning with an adequate manner of relating socially. Plaintiff exhibited quite restless motor behavior, rapid quality of voice, coherent and goal-directed thought process, euthymic mood, intact attention and concentration, impaired recent and remote memory skills, average cognitive functioning, fair-to-poor insight, and apparently poor judgment with continued angry outbursts and mood swings. (T. 245-46.) Dr. Moore diagnosed a mild neurocognitive disorder due to carbon monoxide poisoning, bipolar I disorder with psychotic features, and ADHD (combined type). (T. 247.) She opined that Plaintiff had no limitation in following and understanding simple directions and instructions or performing simple tasks independently; moderate limitation in maintaining attention and concentration, learning new tasks and performing complex tasks independently; and marked limitations in

appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule.  (T. 246.)  Dr. Moore indicated that the results of her examination appeared to be consistent with psychiatric and cognitive issues which might significantly interfere with Plaintiff's ability to function on a daily basis.  (T. 247.)

The ALJ afforded partial weight to Dr. Moore's opinion, but noted that her opinion of marked limitations in the ability to deal with stress, relate with others, make appropriate work decisions, and maintain a work schedule was not consistent with Plaintiff's reported activities of daily living.  (T. 20.)  The ALJ indicated the remainder of Dr. Moore's opinion was afforded some weight because it was a medical opinion and supported by her findings upon examining Plaintiff.  (*Id*.)

In March 2015, as part of the initial determination with respect to Plaintiff's current claim, Dr. Kamin found moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence or pace; and insufficient evidence to evaluate repeated episodes of decompensation each of extended duration.  (T. 71-77.)  Based on the evidence in the file, Dr. Kamin opined Plaintiff would not be able to do detailed or complex work, but retained the capacity for simple work in a low contact setting.  (T. 75.)  The ALJ afforded great weight to Dr. Kamin's opinions because they were medical opinions and based on his medical expertise, knowledge of Social Security disability programs, and review of the evidence of record.  (T. 20-21.)  The ALJ also indicated Dr. Kamin's opinions were consistent with Dr. Dubro's examining opinion.  (*Id*.)

### 3.  Analysis

The ALJ stated that his RFC findings were supported by clinical findings during mental

status examinations, Plaintiff's reported activities of daily living, Dr. Kamin's opinion, Dr. Dubro's opinion, and, in part, by Dr. Moore's opinion. (T. 21.) Plaintiff contends the ALJ erred in weighing the opinion evidence from Dr. Kovaleski, Dr. Moore, Dr. Dubro, and Dr. Kamin. (Dkt. No. 9, at 19-25.) The Court agrees that the ALJ erred in weighing the medical opinion evidence, and orders a remand.

Plaintiff argues that the ALJ erred in affording no weight to Dr. Kovaleski's treating opinion, failing to discuss the regulatory factors, and not recognizing that Dr. Kovaleski treated Plaintiff as a child for the effects of his carbon monoxide poisoning. (Dkt. No. 9, at 21-22; T. 47.) After conducting five psychotherapy sessions with Plaintiff (starting in May 2016), Dr. Kovaleski signed a Mental RFC Assessment that included "Clinical findings" of "moderate depression, poor impulse control, very defiant of authority figures, social withdrawal, very irritable" and a diagnosis including intermittent explosive disorder with poor response to treatment. (T. 263.) The treating psychologist found that Plaintiff would be "off task" due to "needed rest periods, distraction, lack of focus or any other factors attributable to the above listed diagnosis" of "over 50%." (*Id.*) During the hearing, the VE testified that any claimant who would be off task for 15% or more of the workday would not be able to maintain employment, even in occupations falling within the ALJ's RFC of "simple" work. (T. 59-62.) Dr. Kovaleski also opined that Plaintiff would have a "poor" ability to adjust to many aspects of work including relating to co-workers, dealing with the public, interacting with supervisors, dealing with stress, maintaining attention and concentration, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability. (T. 264.)

The ALJ gave no weight to Dr. Kovaleski's opinion in part because he found it was not supported by objective clinical findings, but was based on Plaintiff's subjective complaints of

symptoms. (T. 18-19.) The ALJ placed greater weight on the opinions of consultative examiners who saw Plaintiff only once, but performed basic diagnostic tests involving the ability to count, perform simple calculations, and recall "serial 3s." (T. 19-20, 245-46, 303-04.) These tests relate to the Plaintiff's attention and concentration and recent and remote memory skills. (T. 245-46, 303-04.) However, such "objective clinical findings" are of limited relevance to the key opinions of Dr. Kovaleski--that Plaintiff had a poor ability to relate to others, to deal with stress, to behave in an emotionally stable manner, and to remain on task in a work setting despite these issues.[4] Given the lack of objective measures of many aspects of mental health, greater weight should generally be afforded treating physicians who have multiple opportunities to observe and communicate with the Plaintiff, as opposed to the consulting physicians, who see the Plaintiff once, if at all. *See, e.g., Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018) (doctors who have not treated or examined a patient are generally entitled to less deference; "the treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as x-rays or MRIs");[5] *Estrella v. Berryhill,* 925 F.3d 90, 98 (2d Cir. 2019) (the

[4] While Dr. Kovaleski's various statements are arguably ambiguous, they may suggest that, at least by July 15, 2016, he was comfortable providing his opinion regarding Plaintiff's mental health limitations, but did not believe that it was possible to support opinions about those types of limitations with "objective findings." It may have been appropriate for the ALJ to seek clarification of Dr. Kovaleski's thinking before dismissing his opinions entirely.

[5] The Court acknowledges that Defendant has cited another summary order from the Second Circuit which supports discounting a treating doctor's opinion when it relies solely on subjective complaints of the Plaintiff. *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30-31 (2d Cir. 2018) (ALJ properly rejected an opinion where the doctor's "treatment records only reflect [the claimant's] subjective complaints, and contain[ed] no objective evidence of physical or psychiatric abnormalities" and the doctor "saw [the claimant] only four times, which the ALJ considered 'unlikely to provide an adequate basis for a thorough understanding' of [the claimant's] conditions and limitations.") Plaintiff Smith alleged disability based on both physical and psychiatric conditions--depression, anxiety, bipolar disorder, and neck and

Second Circuit's frequent caution that ALJs should not rely heavily on the findings of consultative physicians after a single examination "is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health" or fluctuating symptoms).

The ALJ also discounted Dr. Kovaleski's opinions because, according to the Mental RFC Assessment form, as submitted, he had only seen Plaintiff three times before rendering his opinion, without mentioning that the doctor's treating relationship with Plaintiff included a period when he was a child. As discussed above, Dr. Kovaleski apparently started the Mental RFC Assessment form in June 2016, but did not complete it until July 15, 2016, and the form only listed three treatment session with Plaintiff as an adult. However, the psychologist's treatment notes, which the ALJ referenced repeatedly, make clear that Dr. Kovaleski saw Plaintiff eleven times before his treatment notes were submitted to the SSA, and five times before he edited and signed the Mental RFC form. That form, as submitted, was arguably unclear about what the psychologist's opinions were at various points in June and July 2016. However, the ALJ did not reconcile any ambiguity by looking to the treatment notes, nor did he seek clarification from the doctor.

The ALJ's opinion did not weigh Dr. Kovaleski's statement in his September 7, 2016 treatment note that he did not believe that Plaintiff was capable of "showing up [for employment] and being productive[,]" which indicates that the psychologist's view as to Plaintiff's inability to remain on task had not changed following their sixth psychotherapy

---

back pain--and the ALJ properly found that Smith's substance use was a contributing factor material to the determination that she was disabled. *Id*. at 29-30. In this case, Plaintiff's limitations were entirely related to mental health issues and symptoms that were well documented since he was a young child, and Dr. Kovaleski had a more extensive treatment relationship with the Plaintiff, including when he was a child.

session.   The ALJ stated that "Dr. Kovaleski encouraged the [Plaintiff] to get out of his house more to be around people and pursue his GED so that he can get a job and support his family." (*Id.*)  What Dr. Kovaleski actually stated, in his March 1, 2017 treatment note, was that Plaintiff was "starting to come around to the notion that he probably will need to get his GED, possibly some training [to] find a job to support his family." (T. 329.)  Dr. Kovaleski advised Plaintiff "not to get ahead of himself" and to make "phone calls to the GED program and to get himself out of the house more . . . .  People have commonly been the source of great stress for him and he needs to learn to control himself when he's around more than one or two." (*Id.*) The Court concludes that the ALJ misinterpreted Dr. Kovaleski's opinions in ways that influenced his decision to afford no weight to those opinions, and that the ALJ erred in applying the treating physician factors.[6]  *See, e.g., Ferraro v. Comm'r of Soc. Sec. Admin.*, 18-384, ___ WL ___, (2d Cir. Mar. 12, 2020), slip op. at 2, 4, 5 (the ALJ erred in not adequately considering the frequency, length, and nature of Plaintiff's treatment relationship with two mental health specialists, including a psychiatrist who met with Plaintiff five times over a one-year period, and in affording more weight to a contrary opinion of a consultative examiner who saw Plaintiff once).

Dr. Kovaleski's opinion that Plaintiff had limitations that were incompatible with maintaining competitive employment--*e.g.*, in interacting with others, dealing with stress, and

---

[6] The ALJ did acknowledge that Dr. Kovaleski was Plaintiff's "treating psychologist" in the first section of his decision, where he explained why he was accepting the late submission of Dr. Kovaleski's treatment notes.  (T. 10, 324-30.)  However, in the portions of his decision where he was weighing the medical opinion evidence, the ALJ did not mention Dr. Kovaleski's specialization, while noting that Dr. Dubro had a Ph. D. and emphasizing the "medical expertise" of non-examining consultant, Dr. Kamin, Ph. D.  (T. 18-21.)  While the ALJ's discussion of the extent to which the various doctors were specialists is not, by itself, a fatal misapplication of the treating physician rule, it contributes to the Court's conclusion that the ALJ was "cherry picking" the medical opinion evidence that supported his findings.

staying on task--was consistent with the findings of consultative examiner, Dr. Moore in March 2015. She found, based on her examination of Plaintiff and various clinical findings, that he had "marked" limitations in appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule. The ALJ gave limited weight to Dr. Moore's findings of marked limitations, based on Plaintiff's testimony regarding his activities of daily living (T. 20), and he assigned greater weight to the January 2011 report of consultative examiner, Dr. Dubro, and the report of non-examining consultant, Dr. Kamin (T. 19-21). Dr. Kamin, without examining the Plaintiff, without access to the treatment notes of Dr. Kovaleski (T. 69-70), and without providing any explanation, implicitly rejected the findings of Dr. Moore that Plaintiff had several marked limitations. (T. 71-76.) Dr. Kamin then opined Plaintiff could perform simple work, without quantifying the extent to which he might be off task. (T. 75.)

The ALJ opined that Plaintiff's reported activities of daily living suggest that he is able "to understand and follow simple tasks,[7] perform simple tasks, manage a schedule and attend to a routine, and interact with others." (T. 18.) The ALJ described many of Plaintiff's daily activities based on the report of Dr. Dubro in 2011, but acknowledged that the Plaintiff reported much more limited activities during his examination by Dr. Moore in 2015. (T. 18, 246, 304.) In summarizing Plaintiff's testimony regarding his activities, the ALJ stated:

> The claimant testified that he is able to perform a wide range of activities of daily living, including childcare. He lives with two young children, ages one and four ([T. 42]). His wife operates an in-home daycare, so he is around other children as well ([T. 42]. He testified that he walked around, asking for applications a few times with the past few years. [T.42.] He spends a few hours playing video games, uses a computer to watch YouTube and

---

[7] Based on his RFC findings (T. 16), the ALJ presumably meant to say that the Plaintiff could understand and follow "simple instructions and directions."

> check Facebook. [T. 43.] He spends his days doing whatever his
> family wants him to do. He cleans house, mows the lawn, does
> chores, changes diapers, and feeds his kids ([T. 44.]).

(T. 18.) However, Plaintiff testified that, when his wife worked, she worked at home as a

babysitter, and she watched the children. (T. 42.) Plaintiff testified that he did not think he

could do a simple job where he worked by himself because he would get distracted too easily

and get frustrated. (T. 44-45.) He stated that he often had angry outbursts when he tried to

interact with the public, had trouble with authority figures, and was "basically always with a

family member" or one close friend with whom he plays video games. (T. 45-46, 49-52, 55-

56.) Plaintiff testified that he did not think he could "mentally handle" a regular work

schedule, in part because his insomnia kept him up most of the night. (T. 51.)

The ability to consistently perform certain daily activities, including childcare, may

support a finding that a claimant can maintain competitive employment. *See, e.g., Herrington

v. Berryhill*, 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of

daily living, including childcare, are an appropriate factor for an ALJ to consider when

assessing claimant's claimed symptoms and limitations) (collecting cases). However, Plaintiff

appeared to acknowledge only sporadic, productive activities with direction and close

oversight by his wife or other family. The daily activities Plaintiff acknowledged would not

seem to suggest an ability to perform consistently in a work setting, particularly given his

problems interacting with others outside his family without getting frustrated, distracted, or

having angry outbursts. *See, e.g., Ferraro v. Comm'r of Soc. Sec. Admin.*, slip. op. at 6

(plaintiff's "ability to care for his father at home has little relevance to his ability to function in

a work setting where he would need to interact appropriately with co-workers and take

instructions from authority figures"); *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y.

23

2015) (finding the ALJ's reliance on plaintiff's daily activities to discount a treating physician's opinion unsupported where "the ALJ did not explain how the performance of these limited activities of daily living translates into the ability to perform substantial gainful work at all exertional levels in a typical competitive workplace environment.")

The ALJ placed the greatest weight on the opinions of consultative examiner, Dr. Dubro from 2011, based on Plaintiff's purported admission that his mental health condition was essentially the same in 2011 as it was at the time of his hearing testimony. (T. 19.) Plaintiff responded to the ALJ's questioning as follows:

> Q     All right. Has your condition been pretty much the same for the last few years?
>
> A     Condition as in, sir? As in what?
>
> Q     Yeah. You're saying you're not able to work. Has this been pretty constant for the last few years?
>
> A     Yes, sir.
>
> Q     Has it changed at all since 2011?
>
> A     Not really, sir.
>
> Q     So it's exactly the same as it was?
>
> A     Pretty much.
>
> Q     All right. Because I've seen that you had a hearing in 2011. I just looked up, and there was a hearing in front of a judge in 2011. You're saying the same – the conditions have not changed since that point.
>
> A     I don't remember that hearing, sir.
>
> Q     Okay. So I'm asking you, has your condition changed since 2011.
>
> A     Not that I know of.

(T. 56-57.)  The consultative examiners concluded that Plaintiff's memory was at least mildly impaired, that his cognitive functioning was low-average to average, and that his insight was fair or poor.  Plaintiff asked the ALJ for clarification as to what he meant by Plaintiff's "condition," and the ALJ defined that word in terms of Plaintiff "not [being] able to work."  Under the circumstances, a fair interpretation of Plaintiff's testimony is that his inability to work was essentially the same in 2011 as it was when he testified, not that his specific mental health symptoms and limitations were all the same.

Notwithstanding the fact that disability hearings are supposed to be non-adversarial, the ALJ elicited, from a cognitively impaired Plaintiff, what the ALJ then interpreted as an admission that Plaintiff's mental health condition and symptoms had not significantly changed since 2011.  The ALJ relied on Plaintiff's purported admission to add to the record and assign great weight to, the consultative opinion evidence (Dr. Dubro and Dr. Kamin) from prior proceedings that had resulted in a determination that Plaintiff was not disabled.  At the same time, the ALJ refused to add to the record the considerable medical evidence from Plaintiff's childhood SSI files, which had resulted in a disability determination.[8]  Futher, the ALJ assigned no weight to the opinion of Dr. Reagles, who after an exhaustive review of the evaluations and treatment of Plaintiff during his childhood, found that "given Plaintiff's uncontrollable outbursts of verbal and physical aggression directed at both peers and supervisors, [he would be] unable as an adult to maintain sustained and gainful employment in the competitive labor market."  (T. 18, 291.)  Selectively relying on prior evidence that supported his findings, the ALJ rejected the more contemporaneous medical opinion evidence

[8] While the ALJ articulated sound reasons for not incorporating Plaintiff's childhood SSI file, there is still an issue as to whether the ALJ selectively relied upon other evidence supporting his findings that was also outside the relevant time period.

of Plaintiff's current, and more extensive, symptoms and limitations. *See, e.g., Royal v. Astrue*, 5:11-CV456, 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (While ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence that supports a particular conclusion.)*, report and recommendation adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012); *Walsh v. Colvin*, 13-CV-0603 (GTS/ATB), 2014 WL 4966142, at *9 (N.D.N.Y. Sept. 30, 2014) ("The ALJ cannot 'cherry pick' only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence.") (citations omitted)).

The Court concludes that the ALJ erred in his consideration of the medical opinion evidence. Because of that error, the Court cannot determine whether the ALJ's RFC findings, and ultimate determination that Plaintiff was not disabled, were supported by substantial evidence. Accordingly, the ALJ's error is not harmless and a remand is required. *See, e.g., Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (because the court is not convinced that proper consideration of the physician's opinion would not change the outcome of the claim, it cannot find that ALJ's error harmless).

### C. Nature of Remand

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This Court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

On remand, the Commissioner should properly evaluate the medical opinion evidence, with due consideration of the treating physician rule, and reevaluate Plaintiff's RFC and ability to perform competitive work. The Commissioner should consider whether updated medical evidence should be obtained on remand.

**ACCORDINGLY**, it is

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings, consistent with this Decision.

Dated: March 16, 2020
Syracuse, New York

Hon. Andrew T. Baxter
U.S. Magistrate Judge